EDMUND G. BROWN JR.
Attorney General of the State of California
DANE R. GILLETTE
Chief Assistant Attorney General
GERALD A. ENGLER
Senior Assistant Attorney General
PEGGY S. RUFFRA
Supervising Deputy Attorney General
JILL M. THAYER, State Bar No. 166428
Deputy Attorney General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 703-5954
 Fax:  (415) 703-1234
 Email:  Jill.Thayer@doj.ca.gov

Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| **SHAVOUGUE A. MASON,** | C 07-04594 SBA (PR) |
| Petitioner, | |
| v. | |
| **A. HEDGPETH, Warden,** | |
| Respondent. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER**

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
5  JILL M. THAYER, State Bar No. 166428
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone:  (415) 703-5954
    Fax:  (415) 703-1234
8   Email:  Jill.Thayer@doj.ca.gov

9  Attorneys for Respondent

10            IN THE UNITED STATES DISTRICT COURT

11          FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                    OAKLAND DIVISION

13

14  SHAVOUGUE A. MASON,                    C 07-04594 SBA (PR)

15                          Petitioner,    **MEMORANDUM OF POINTS**
                                           **AND AUTHORITIES IN**
16       v.                                **SUPPORT OF ANSWER**

17  A. HEDGPETH, Warden,

18                          Respondent.

19

20              **STATEMENT OF THE CASE**

21          On February 7, 2005, a jury found petitioner guilty of three counts of murder (Cal. Pen.

22  Code, § 187), two counts of gross vehicular manslaughter while intoxicated (Cal. Pen. Code,

23  §191.5(a)), two counts of vehicular manslaughter with gross negligence (Cal. Pen. Code, §

24  192(c)(1)), driving under the influence of alcohol causing injury (Cal. Veh. Code, § 23153(a)), and

25  driving with a blood alcohol level of 0.08 or more (Cal. Veh. Code, § 23153(b)).  The jury also

26  found true allegations that petitioner fled the scene after committing the four manslaughter offenses

27  (Cal. Veh. Code, § 20001(c)) and that petitioner personally inflicted great bodily injury on Rene M.

28  Porrass and Rosalinda Gonzales in connection with the last two counts (Cal. Pen. Code, §

1  12022.7(a)).  Ex. 1, Clerk's Transcript ("CT") at 218-219.  On March 29, 2005, the trial court

2  sentenced petitioner to 45 years to life.  CT at 263-264.

3      On September 7, 2006, the California Court of Appeal affirmed the judgment in an unpublished

4  opinion.  Ex. 6.  Following the grant of petitioner's petition for rehearing, on February 8, 2007, the

5  California Court of Appeal again affirmed the judgment in an unpublished opinion.  Exs. 8 & 12.

6  The California Supreme Court denied review on May 9, 2007.  Ex. 14.

7                                    **STATEMENT OF FACTS**

8      The California Court of Appeal summarized the facts of the case as follows.

9      Around noon on December 4, 2003, City of Salinas employees Jose
   Zepeda and Raul Zagal were parked at the curb of Park Street between Villa
10  and Homestead Streets, when they heard a vehicle approaching them eastbound
   on Park Street.  A green car passed them at a speed both estimated to be over
11  60 miles per hour.  Zepeda got a good look at the driver and later identified him
   as defendant.

12      Park Street runs east-west and has stop signs at each intersection which
13  permit north-south traffic to flow unimpeded.  The neighborhood is a
   high-density residential area with a 25 mile per hour speed limit.  Zepeda
14  watched the green car accelerate to about 75 miles per hour though the
   intersection of Park and Homestead Streets without attempting to stop at the
15  stop sign.  The vehicle had reached about 80 miles per hour when it entered the
   next intersection at West Street, again making no attempt to stop at the stop
16  sign.  Zepeda lost sight of the green car between West Street and the third
   intersection at Riker Street.

17
   Bruce Laine was driving on West Street approaching the Park Street
18  intersection when he saw a vehicle traveling more than 60 miles per hour "fl[y]
   through the stop signs at Park and West Street" and collide with a BMW
19  traveling about 20 miles per hour southbound on Riker Street.  Rene Porras was
   the driver of the BMW;  eight-months pregnant Rosalinda Gonzales was the
20  front seat passenger, and three-year-old Rene Porras, Jr., and five-year-old
   Joshua Perez were in the backseat.

21
   Defendant's car, a Volkswagen Passat, which had been traveling
22  eastbound on Park Street, came to rest in the middle of the intersection with
   Riker Street facing westbound.  The BMW came to rest against a residence.  A
23  third vehicle was struck by the BMW as it careened toward the residence;  it
   sustained only minor damage.

24
   Defendant's airbag deployed.  He stayed inside his car for 10 to 20
25  seconds, then slowly emerged looking both "very weary" and "very stunned."
   He walked to the BMW, leaned over and looked briefly into the car through the
26  passenger side window, and then either walked rapidly or ran away from the
   scene.  He went to the apartment he shared with his girlfriend, Misty Flores,
27  about 1/10th of a mile from the scene, and had her call 911.  Police took him
   into custody shortly thereafter.  Police found a three-quarter full bottle of
28  Bacardi Silver Raz, a raspberry-flavored rum drink with the alcohol content of

beer, on the kitchen counter.  An empty 750 mm bottle of Hennessey cognac was found in the VW's trunk compartment.

When police officers took defendant into custody, he smelled moderately of alcohol and had "somewhat glassy and red" eyes.  He was given field sobriety tests at the police department at 1:15 p.m., causing an officer to conclude he was under the influence of alcohol.  Defendant's blood alcohol level at that time, measured with a hand-held breath screening device, was 0.13. A blood sample drawn at 1:50 p.m. yielded a blood alcohol level of 0.19 percent.  At trial, a criminalist testified that the hand-held screening device does not necessarily accurately measure alcohol that might be in a person's system, depending on whether the subject has blown long enough or hard enough to get to the deepest air in the lungs.  The criminalist testified that based on the two test results, defendant's blood alcohol level at noon, just before the accident, was 0.23.

Porras died as a result of major head injuries.  Gonzales, who could not be taken from the car until part of it had been cut away, died from a broken neck exacerbated by significant blood loss from a ruptured uterus.    The fully-developed female fetus being carried by Gonzales died from asphyxiation brought on by the terminal injuries to Gonzales.  Rene Porras, Jr., suffered a fractured tibia and Joshua Perez escaped with bruises and scrapes.

Conclusions based on a reconstruction of the accident were:    (1) defendant's vehicle had no mechanical problems that would have contributed to the accident;  (2) defendant's speed at impact was 46.28 miles per hour and the speed of the BMW was 20.16;  and (3) defendant's car had not stopped at the stop sign at the site of the collision, Riker and Park Streets.  An expert testified that "impact speed" is not the speed at impact;  it is the speed "where the crushing stops."  Defendant's speed prior to impact would have been greater than 46.28 miles per hour.

Ex. 12 at 2-4.

The California Court of Appeal summarized the defense case as follows.

At the jury trial, defendant testified that he was working as a night auditor/manager at the Monterey Beach Resort in December 2003, and that he had been working overtime eight-hour night and day shifts that month.  On December 4, he woke up early after a few hours sleep and took the child of a family friend to school.  He then went to a friend's house, stayed there for a while, and then gave his friend a ride somewhere, after which he decided to go home and lie down because he was tired.  It was about 11:45 a.m.  Driving at about 25 miles per hour, he turned onto Park Street from Villa Street, did a "bump stop" at Homestead and Park Streets, dozed off as he passed Homestead, and awoke just before the collision.  He slammed on his brakes, but crashed into the BMW's passenger door.

Defendant's air bag deployed.  He did not become unconscious, but sat in his car stunned, and then climbed out and went to the other car.  Everybody was unconscious except the two children who were crying.  He had to "actually ask the kids to calm down because I couldn't get them out of the car.... I told them to wait until the police came."  Defendant explained he did not try to get the children out of the car before the police or an ambulance came "[b]ecause I have medical training and you're not supposed to touch people until medical

Memorandum of Points and Authorities in Support of Answer- C 07-04594 SBA (PR)

3

people get there." There was a lady standing in the yard and defendant asked her to call 911. She was speaking Spanish. Defendant stated he was hysterical. He did not see anyone else around although Zepeda and others who observed him driving were coming to the scene. When the lady "didn't respond, I just basically panicked and I said I was going to my house to call the police." He ran home and told his girlfriend, "I need to call 911. Call 911."

Defendant denied having anything to drink before the collision but drank only after it. After he told Flores to call the police, he got a half-full pint bottle of Hennessey cognac out of a cabinet and "just turned it up and drunk [ sic ] it" all. He also took some sips from a Bacardi Silver as well, but that was while he was on the phone with the dispatcher. While he was still on the phone with the dispatcher, there was a knock on the door. Police were waiting for him downstairs. He left the apartment to meet them and was immediately handcuffed. After he had been outside for a while, he began to feel the effects of the alcohol he had drunk at home.

Defendant admitted going "a few" miles per hour over the speed limit, but he did not believe he was going between 60 and 80 miles per hour. He acknowledged that going at a high speed through an intersection was "possibly" dangerous to others, that unsafe speed could kill, and that driving under the influence was dangerous. He described himself as hysterical and panicked after the collision and said he drank the brandy to calm his nerves.

Flores corroborated she called 911 for defendant and provided him with alcohol. She said defendant told her he did not know if anyone had been hurt in the accident. Flores's son testified about putting a liquor container in a dumpster.

Ex. 12 at 4-5.

The California Court of Appeal summarized the rebuttal testimony of Officer John Lynn as follows.

Officer John Lynn testified Flores told him defendant drank a 12-ounce bottle of Bacardi Silver plus a few sips from a second bottle. The first went into the dumpster and the second was taken by police. Flores stated there had been no bottles of Hennessey in the apartment.

Ex. 12 at 5-6; Ex. 2 at 1348-1351.

**ARGUMENT**

**I.**

**STANDARD OF REVIEW**

Federal habeas corpus review of a state judgment is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Under the AEDPA, the federal court has no authority to grant habeas relief unless the state court's ruling was "contrary to, or involved an

1    unreasonable application of," clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1).

2    A state court's decision is "contrary to" law if the state court arrives at a conclusion opposite to that

3    reached by the Supreme Court on a question of law, or reaches a different conclusion based on facts

4    materially indistinguishable from a Supreme Court case. *Williams v. Taylor*, 529 U.S. 362, 413

5    (2000). A state court's decision constitutes an "unreasonable application" of Supreme Court

6    precedent if the state court identifies the correct governing legal principles, but the application of

7    law to the facts is not merely erroneous but objectively unreasonable. *Id.* at 411-13. The AEDPA

8    imposes a "highly deferential" standard for evaluating state court rulings and "demands that state

9    court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)

10   (per curiam). In conducting habeas review, federal courts presume "that state courts know and

11   follow the law." *Id.*

12                                              **II.**

13                **THE INSTRUCTION REGARDING THE BASIC SPEED LAW, WHICH
                  CREATED AN IMPERMISSIBLE MANDATORY PRESUMPTION, DID
14                NOT HAVE A SUBSTANTIAL AND INJURIOUS EFFECT ON THE
                  VERDICT**

15

16           Petitioner contends the California Court of Appeal erroneously applied Supreme Court

17   authority in determining that giving an instruction which created a mandatory presumption was

18   harmless. Pet. at 6 & Ex. A at 11-15. Since the instruction did not have a substantial and injurious

19   effect in determining the jury's verdict, petitioner is not entitled to habeas relief.

20           The trial court instructed the jury on implied malice as follows:

21               Malice is implied when (1) the killing resulted from an intentional act, (2)
             the natural consequences of the act are dangerous to human life and (3) the act
22           was deliberately performed with knowledge of the danger to and with conscious
             disregard for human life.
23
     Ex. 2, Reporter's Transcript ("RT") at 1657; CT at 305.
24
             The trial court also instructed the jury regarding the basic speed law as follows:
25
                 The basic speed law of the state is as follows: No person shall drive a
26           vehicle at a speed greater than is reasonable or prudent, having due regard for
             weather, visibility, traffic on and the surface and width of the highway and in
27           no event at a speed which endangers the safety of persons or property.

28               A violation of the basic law is the commission of an act inherently

Memorandum of Points and Authorities in Support of Answer- C 07-04594 SBA (PR)

1        dangerous to human life and safety is [sic] a misdemeanor or an infraction.

2

3              The rate of speed at which a person travels is considered as an isolated fact
          in terms of seventy [sic] miles per hour is not alone proof of a violation.

4   RT at 1660-61;  CT at 313.

5              The California Court of Appeal determined that while the instruction that a violation of

6   the basic speed law is the commission of an act inherently dangerous to human life created an

7   impermissible mandatory presumption, the error was harmless under any standard.  Ex. 12 at 22-25.

8   The state court analyzed the harmlessness of the error as follows:

9              Bringing this analysis to our case, the parties recognized that intent to kill
          was an issue.  Both parties fully and fairly presented the evidence at their
10         command on the issue.  In his testimony, defendant acknowledged speeding
          (but disputed the prosecution's expert's 60 mile-per-hour estimate), and
11         conceded that driving under the influence was dangerous, that unsafe speed
          could kill, that traveling at high speed through intersections was dangerous, and
12         that running a stop sign could kill.  He implicitly admitted running the stop sign
          just before broadsiding the victims' vehicle by testifying that (contrary to the
13         physical evidence which showed no sign of braking) he slammed on the brakes
          before the collision.

14
              Defense counsel conceded in closing argument that defendant was
15         speeding and acknowledged the 46 mile-per-hour impact speed (identified by
          the expert as the speed "when the crushing stops," in this case estimated at 21
16         miles-per-hour above the 25-mile-per-hour speed limit, but less than the speed
          prior to impact which could have been greater than 46 miles per hour).

17
              The prosecution presented further facts of defendant's impairment with
18         evidence of a .23 blood alcohol level before the accident at noon, and the
          physical symptoms of moderately bloodshot and watery eyes and an odor of
19         alcohol.

20             We conclude the record not only established malice, that is, conduct
          characterized as a wanton disregard for life and a subjective awareness of the
21         risk created ([*People v.*] *Watson, supra,* 30 Cal.3d [290] at p. 298 [1981]) as a
          matter of law, but showed that the contrary evidence (defendant's dispute over
22         his rate of speed, and whether he had drunk alcohol before the accident, that
          defendant braked before the impact) was not worthy of consideration.  There
23         is no realistic chance the defendant was actually harmed by the error.  To
          reverse a judgment under such circumstances encourages litigants to abuse the
24         judicial process and bestirs the public to ridicule it. ([*People v.*] *Flood, supra,*
          18 Cal.4th [470] at p. 507 [1988].)  Under both *People v. Watson, supra,* 46
25         Cal.2d [818] at pages 836 through 837 (1956), and *Chapman,* [*v. California*]
          *supra,* 386 U.S. [18] at page 24 [1967], the error was harmless.

26  Ex. 12 at 24-25.

27             Error in instructing with a presumption is assessed for harmlessness.  *Neder v. United*

28

Memorandum of Points and Authorities in Support of Answer- C 07-04594 SBA (PR)

6

1  *States*, 527 U.S. 1, 9 (1999); *Yates v. Evatt*, 500 U.S. 391, 402-03 (1991); *Carella v. California*,

2  491 U.S. 263, 266-267 (1989) (per curiam).  On habeas, the error is reviewed under *Brecht v.*

3  *Abrahamson*, 507 U.S. 619, 637 (1993) for whether it had a substantial and injurious effect on the

4  jury's verdict. *Fry v. Pliler*, 127 S.Ct. 2321, 2328 (2007); *Calderon v. Coleman*, 525 U.S. 141, 147

5  (1998) (per curiam); *California v. Roy*, 519 U.S. 2, 5-6 (1996); *Stanton v. Benzler*, 146 F.3d 726,

6  728 (9th Cir. 1998) (if instruction that arsenic trioxide is a poison were an unconstitutional

7  mandatory presumption, *Brecht* standard applies). "[I]n § 2254 proceedings a court must assess the

8  prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and

9  injurious effect' standard set forth in *Brecht*, 507 U.S. 619 [], whether or not the state appellate court

10  recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable

11  doubt' standard set forth in *Chapman*, 386 U.S. 18." *Fry v. Pliler*, 127 S.Ct. at 2328.

12          The *Brecht* standard is equivalent to the federal harmless error standard of *Kotteakos v.*

13  *United States*, 328 U.S. 750 (1946).  507 U.S. at 638.  Under *Brecht*, habeas petitioners are not

14  entitled to relief in the absence of actual prejudice "in light of the record as a whole." *Id.* at 637-38;

15  *Morales v. Woodford*, 388 F.3d1159, 1171-72 (9th Cir. 2004). "[C]ourts do review all the state's

16  evidence to determine whether error had a substantial and injurious effect on the jury's verdict."

17  *Sims v. Brown*, 425 F.3d 560, 571 (9th Cir. 2005); *Shackleford v. Hubbard*, 234 F.3d 1072, 1078-

18  79 (9th Cir. 2000).

19          Here, the evidence was overwhelming that petitioner intentionally engaged in multiple

20  acts, the natural consequences of which were dangerous to human life.  In addition to speeding over

21  21 miles per hour over the speed limit, the evidence established that petitioner was highly

22  intoxicated, ran through multiple stop signs, and failed to yield to traffic at intersections.  Petitioner

23  does not contend that his multiple offenses were not dangerous to human life.  See *Neder*, 527 U.S.

24  at 18-19 (error harmless where defendant did not contest omitted element).  As the state court noted,

25  petitioner "conceded that driving under the influence was dangerous, that unsafe speed could kill,

26  that traveling at high speed through intersections was dangerous, and that running a stop sign could

27  kill." Ex. 12 at 24.  Since petitioner admitted  at trial that the multiple acts in which he engaged

28  were dangerous to human life, the error in instructing the jury to presume a violation of the basic

Memorandum of Points and Authorities in Support of Answer- C 07-04594 SBA (PR)

7

1  speed law is dangerous to human life did not have a substantial and injurious effect on the jury's

2  verdict.

3                                            **III.**

4          **THE STATE COURT DETERMINATION THAT SUFFICIENT
        EVIDENCE SUPPORTS THE JURY'S FINDING OF IMPLIED MALICE**

5          **WAS NOT AN UNREASONABLE APPLICATION OF SUPREME
        COURT AUTHORITY**

6

7          Petitioner contends the evidence was insufficient to support the implied malice element

8  of the murder convictions.  Pet. at 6 & Ex. A at 15-24.  The state court's determination that

9  substantial evidence supported the jury's finding of implied malice was not an unreasonable

10 application of Supreme Court authority.

11         In reviewing a state prisoner's claim of insufficient evidence, a federal court does not

12 determine whether it believes that the evidence established guilt beyond a reasonable doubt.  The

13 federal court determines only whether, "after viewing the evidence in the light most favorable to the

14 prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond

15 a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  "Once

16 a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the

17 evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to

18 be considered in the light most favorable to the prosecution."  *Id.* (emphasis in original).

19         Sufficiency of evidence review in California expressly follows the *Jackson* standard.

20 *People v. Johnson*, 26 Cal.3d 557, 575-78 (1980).  Accordingly, the applicable standard of review

21 is whether the decision of the California Court of Appeals reflected an unreasonable application of

22 *Jackson*.  *Juan H. v. Allen*, 408 F.3d 1262, 1275 (9th Cir. 2005).

23         Federal habeas review of a state court ruling on sufficiency of the evidence is performed

24 "with explicit reference to the substantive elements of the criminal offense as defined by state law."

25 *Jackson*, 443 U.S. at 324 n. 16.  As noted above, the trial court gave the following instruction

26 defining implied malice:

27         Malice is implied when (1) the killing resulted from an intentional act, (2)
        the natural consequences of the act are dangerous to human life and (3) the act

28         was deliberately performed with knowledge of the danger to and with conscious

1    disregard for human life.

2    RT at 1657; CT at 305.  The instruction accurately defines implied malice under California law.

3    *People v. Dellinger*, 49 Cal.3d 1212, 1222 (1989).  "A finding of implied malice depends upon a

4    determination that the defendant *actually appreciated* the risk involved."  *People v. Watson*, 30

5    Cal.3d 290, 296-97 (1981).

6        Numerous cases in California have upheld drunk driving murder convictions based on

7    implied malice.  *People v. Autry*, 37 Cal.App.4th 351, 358 (1995), and cases cited therein.  As

8    summarized in *People v. Talamantes*, 11 Cal.App.4th 968, 973 (1992), the cases have relied on some

9    or all of the following factors in upholding drink driving murder convictions:  (1) a blood alcohol

10   level above the 0.08 percent legal limit;  (2) a pre-drinking intent to drive;  (3) knowledge of the

11   hazards of driving while intoxicated;  and (4) highly dangerous driving.

12       The California Court of Appeal reviewed the extensive evidence presented by the

13   prosecution establishing petitioner's prior knowledge that violating traffic laws and driving while

14   intoxicated endangers human life.  Ex. 12 at 6-8.  On March 18, 2001, petitioner was driving behind

15   his friend, Abad Hughes, on Blanco Road when a Jeep, traveling on the wrong side of the road, hit

16   petitioner's car and knocked it off the road.  The Jeep continued in the wrong lane and crashed into

17   Hughes' car, killing Hughes.  Ex. 12 at 6-7.  On October 6, 1999, petitioner's car struck the right

18   rear of another car that was slowing to make a left turn, causing between $2300 and $2400 in

19   damage.  Ex. 12 at 7.  Petitioner was convicted of an alcohol-related reckless driving based on an

20   incident on March 26, 1993.  Ex. 12 at 7-8.  Petitioner had six convictions for speeding, one for

21   disobeying a traffic signal, and one for failure to yield to a pedestrian in an intersection.  Ex. 12 at

22   8.

23       The state court continued as follows:

24       Substantial evidence—of defendant's conduct on the day in question, of
         defendant's admissions, and of his history of dangerous driving—supports the
25       jury's finding that defendant "*actually appreciated* the risk [of danger to the
         lives of others] involved" (*Watson, supra,* 30 Cal.3d at p. 297) in drinking and
26       driving, speeding (60-80 mph in a 25 mph zone), and running stop signs.

27       Expert testimony placed defendant's blood alcohol level at 0.23 at noon,
         just before the collision.  Defendant admitted under cross-examination that he
28       was driving "a few miles" over the speed limit; he did not come to a complete

1    stop at the Homestead intersection;  and he dozed off just before the collision.
     He also stated he knew it was dangerous to the lives of others to drive while
2    under the influence, that he knew there was possible danger to others when one
     drives at a high speed through an intersection, and that he knew driving at an
3    unsafe speed could kill.  Defendant's conduct immediately after the accident
     (looking into the BMW and seeing unconscious adults and crying children,
4    doing nothing to help them, running home, and drinking a substantial amount
     of alcohol before and while talking to the dispatcher) supported the inference
5    of a consciousness of guilt that his dangerous driving while intoxicated resulted
     in harm to the victims.     Furthermore, defendant's consuming alcohol
6    immediately after the accident and telling the 911 operator that he had just
     started drinking reasonably supports the inference he consciously attempted to
7    mislead the investigators and make irrelevant the results of the blood alcohol
     test.  Finally, in light of the true finding of the allegation that he fled from the
8    scene, evidence of flight supports an inference of consciousness of guilt. ([Cal.
     Pen. Code ] §§ 1127c.)
9
         Defendant's driving history entitled the jury to infer that regardless of the
10   circumstances surrounding a prior instance of reckless driving, "the driver's
     subsequent apprehension and prosecution for that conduct must impart a
11   knowledge and understanding of the personal and social consequences of such
     behavior." (*People v. Ortiz* (2003) 109 Cal.App.4th 104, 115 (*Ortiz*).)  In this
12   case, defendant's driving history and his subsequent failure to conform his
     conduct to statutory norms is evidence supporting an inference of malice
13   because it reflects actions done with a subjective awareness of danger greater
     than that of other drivers, and a willingness to commit the acts anyway. (*Id.* at
14   pp. 115-116.)  Even the Blanco Road accident for which defendant was not
     charged and in which his friend was killed supports an inference by a rational
15   jury that the totality of defendant's past experiences gave him the knowledge
     to appreciate the risk to human life of a driver's failure to conform his conduct
16   to the rules governing the operation of a vehicle, despite which defendant acted
     deliberately with conscious disregard for life.  (*Watson, supra,* 30 Cal.3d at p.
17   296.)

18   Ex. 12 at 11-12.

19        In light of the entire record, the California Court of Appeal's conclusion that sufficient

20   evidence supported the jury's finding of implied malice was not objectively unreasonable. Petitioner

21   admitted that he knew before the accident that driving under the influence was dangerous, that

22   speeding through a stop sign was dangerous to human life, that speeding was dangerous to human

23   life, and that unsafe operation of a vehicle could kill other people. RT at 1529, 1539-42.  He had

24   a history of multiple convictions for a variety of traffic offenses, and personally witnessed the death

25   of a friend due to unsafe driving by another person.  Finally, petitioner's high level of intoxication

26   and dangerous driving on the day of the incident showed that he actually knew of the danger his

27   conduct posed to human life, yet chose to disregard it.   Accordingly, the state court did not

28   unreasonably apply *Jackson* in concluding that substantial evidence supported petitioner's murder

Memorandum of Points and Authorities in Support of Answer- C 07-04594 SBA (PR)

1  convictions.

2                                              **IV.**

3      **ADMISSION OF EVIDENCE OF PETITIONER'S EXPERIENCE WITH
        DEADLY TRAFFIC ACCIDENT AND UNSAFE DRIVING HISTORY
4       DID NOT VIOLATE HIS RIGHT TO DUE PROCESS**

5              Petitioner contends admission of evidence of the Blanco Road accident and his prior traffic

6  and accident history violated his right to due process because it was prejudicial and irrelevant.  Pet.

7  at 6 and Ex. A at 24-44.  The evidence was relevant to establish petitioner's actual knowledge of the

8  danger his conduct presented to human life.  Moreover, the evidence was not so prejudicial that its

9  admission violated fundamental due process.

10             In a federal habeas proceeding, the court does not review alleged violations of a state's

11  evidentiary rules.  *Windham v. Merkel*, 163 F.3d 1092, 1103 (9th Cir. 1998).  Federal habeas relief

12  is available only when "the admission of evidence rendered the trial so fundamentally unfair as to

13  violate due process."  *Id.*  "Only if there are *no* permissible inferences the jury may draw from the

14  evidence can its admission violate due process.  Even then, the evidence must 'be of such quality

15  as necessarily prevents a fair trial.'"  *Jammal v. Van de Kamp*, 926 F.2d 918 (9th Cir. 1991), quoting

16  *Kealohapauole v. Shimoda*, 800 F.2d 1463, 1465  (9th Cir. 1986) (emphasis in original).  "A habeas

17  petitioner bears a heavy burden in showing a due process violation based on an evidentiary

18  decision."  *Boyde v. Brown*, 404 F.3d 1159, 1172 (9th Cir. 2005).

19             Petitioner contends that evidence of the Blanco Road accident was irrelevant because

20  petitioner did not cause the accident, and he did not drive on the wrong side of the road in the

21  present accident.  Pet. at Ex. A at 29.  The California Court of Appeal determined the evidence was

22  relevant, reasoning as follows:

23             First, defendant's driving conduct on Blanco Road was not admitted . . .
        as uncharged bad acts evidence.  Defendant was not accused of culpability in
24      that incident, and there was no evidence that he drove in a manner that was
        unsafe.  However, the incident, in all its tragic detail, was relevant to
25      defendant's state of mind.  On Blanco Road, defendant experienced the results
        of someone else's unlawful drinking and driving which put him in immediate
26      danger and from which he narrowly escaped;  which caused the death of his
        friend whose body was "hanging out of the driver's side from his waist where
27      the window starts and then his head was smashed into the ground" with "brain
        matter [splattered] across the road";  and which injured the culpable driver who
28      was pinned in his vehicle, unconscious.  The experience was relevant on the

issue of defendant's knowledge and subjective awareness that unlawful operation of a vehicle could result in death to other persons. The fact that the person killed was a friend supported the further inference that the death would have a heightened impact on defendant's subjective awareness.

Ex. 12 at 17.

Evidence of the Blanco Road accident was relevant on the issue of petitioner's subjective awareness of the dangerousness of reckless driving. The experience added to petitioner's knowledge of the consequences that flow from unlawful operation of a vehicle on a public road. Since the evidence was relevant, its admission did not violate due process. *See Williams v. Stewart*, 441 F.3d 1030, 1040 (9th Cir. 2006) (evidence admissible to show intent); *Houston v. Roe*, 177 F.3d 901, 910 n.6 (9th Cir. 1999) (same).

Petitioner contends the trial court erred in admitting evidence that petitioner consumed alcohol after the Blanco Road accident. Pet. at Ex. A at 31-37. The state court determined that the evidence was highly probative on the issue of petitioner's credibility, because he had offered the same explanation for having alcohol on his breath after the Blanco Road accident that he offered in the present case. Ex. 12 at 17-18. Since the evidence was relevant, its admission did not violate due process.

Petitioner also contends that the admission of evidence of his prior traffic and accident history violated his right to due process because it was irrelevant and prejudicial. Pet. at Ex. A at 37-41. The California Court of Appeal concluded that petitioner's driving record was relevant, reasoning as follows:

> Whether defendant's official driving record is similar to that of "almost any driver," the facts presented by the prosecutor—that defendant was caught in violations involving the safe operation of a motor vehicle on 10 occasions, plus a "wet" reckless driving and a collision with John Jones—that he was brought before the court and convicted of each offense and required to pay a penalty—is evidence from which the jury could infer that past experience had warned him that speeding, failing to yield to a pedestrian, failing to stop at a stop sign, and driving under the influence of alcohol, created a substantial risk to human life.
>
> "Psychologically speaking, the insights of the courts in these cases [where other evidence shows a wanton disregard for life and the facts demonstrate a subjective awareness of the risk created] seem little more than commonplace, intuitively familiar to most. A jury is entitled to infer that regardless of the mental state or condition that accompanies an instance of reckless driving—whether intoxication, rage, or willful irresponsibility—the driver's

subsequent apprehension and prosecution for that conduct must impart a knowledge and understanding of the personal and social consequences of such behavior. The lesson in these many cases was not lost on the trial court . . . [As the trial judge stated from the bench,] '[e]very time the defendant drove badly before he allegedly committed these two murders,' . . . 'and every time he was convicted or arrested or punished in some fashion, *his awareness of the dangers of driving badly increased* and that is what the district attorney has a legitimate right to try to prove . . . [did] this defendant have implied malice in his mind or not when he drove the way he did, and that is a subjective standard. So we have to find out what he was exposed to that most people aren't exposed to in order to understand his level of awareness of the dangers of driving badly.' (Italics added [by *Ortiz* ].)" (*Ortiz, supra,* 109 Cal.App.4th at pp. 115-116.)

Our jury, also, could reasonably infer that on this occasion as defendant sped through several stop signs after having been drinking, he was aware of the risk to safety of which he had been warned on more than 10 occasions and which he was then consciously disregarding. This evidence formed a basis from which the jury could evaluate whether defendant's knowledge as informed by past events when applied to the facts of the instant case demonstrated the implied malice necessary to find second-degree murder.

Ex. 12 at 15-16.

Before the prosecution presented evidence of petitioner's traffic violations, the trial court instructed the jury as follows:

evidence is going to be introduced for the purpose of showing that the Defendant committed infractions. It is not used for any purpose other than that, for which he is on trial, this evidence, if believed, may not be considered by you to prove that the Defendant is a person of bad character or that he has a disposition to commit crimes. [¶] It may be considered by you only for the limited purpose as determining if it tends to show the existence or the intent or mental state which is a necessary element of the crime of murder as charged in counts one, two and three. [¶¶] For the limited purpose for which you may consider this evidence, you must weigh it in the same manner as all the other evidence in the case. You are not permitted to consider this evidence for any other purpose.

RT at 1061.

Instructions limiting the use of uncharged crimes evidence support a determination that the admission of uncharged crimes evidence did not violate due process. *Gordon v. Duran*, 895 F.2d 610, 613 (9th Cir. 1985).

Evidence of petitioner's prior accident and traffic convictions created a reasonable inference that he knew unsafe driving endangered human life. Moreover, the trial court instructed the jury regarding the limited purpose of the evidence. Accordingly, its admission did not violate petitioner's right to due process.

V.

**THE STATE COURT'S DETERMINATION THAT PETITIONER WAS NOT PREJUDICED BY HIS ATTORNEY'S FAILURE TO REQUEST A LIMITING INSTRUCTION REGARDING THE BLANCO ROAD EVIDENCE WAS NOT AN UNREASONABLE APPLICATION OF SUPREME COURT AUTHORITY**

Petitioner contends his attorney rendered ineffective assistance by failing to request an instruction limiting the jury's consideration of the evidence from the Blanco Road accident. Pet. at 6 & Ex. A at 44-46. The state court's determination that petitioner was not prejudiced by the lack of a limiting instruction was not an unreasonable application of Supreme Court authority.

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on an ineffective assistance of counsel claim, a defendant must show that counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688. The defendant must also show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In federal habeas proceedings, "it is the habeas applicant's burden to show that the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Visciotti*, 537 U.S. at 25. Thus, federal habeas review of a Sixth Amendment claim is "doubly deferential." *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (per curiam).

The state court determined that defense counsel's performance was deficient for failing to request a limiting instruction regarding the Blanco Road accident. Ex. 12 at 20. The state court concluded that the lack of a limiting instruction did not prejudice petitioner, reasoning as follows:

> In this case, defendant has not shown that he was prejudiced, that is, that there is a reasonable probability that, absent the alleged errors, the jury would have entertained a reasonable doubt respecting the defendant's guilt. (*Strickland, supra,* 466 U.S. at p. 695.) The evidence of the circumstances of the crime was overwhelming. Disinterested witnesses either observed defendant's preaccident speeding and red-light running or observed the collision itself. They also observed defendant's conduct after the accident when he left the scene. There was substantial evidence of defendant's inebriation at the time of the accident. Using breath and blood readings taken after the accident, the criminalist was able to extrapolate defendant's blood alcohol level just before the accident. At 0.23, defendant's blood alcohol level was well

beyond the 0.08 level at which a driver is guilty of violating [California]
Vehicle Code section 23153, subdivision (b), driving with a blood alcohol of
0.08 or above. Evidence of implied malice was well established as stated *ante*.
In light of the totality of the evidence, it is not reasonably likely that the
outcome would have been more favorable to defendant in the absence of the
error.

Ex. 12 at 20-21.

The evidence of petitioner's guilt in the present case was overwhelming. As discussed

above, extensive evidence regarding the circumstances of the offenses and petitioner's prior history

of traffic violations established his knowledge of the danger inherent in driving as he did. The jury

was aware petitioner was not at fault for the Blanco Road accident. Petitioner makes no argument

that the lack of a limiting instruction prejudiced him. Pet. at Ex. A at 44-46. Accordingly, the state

court's determination that he was not prejudiced was not objectively unreasonable. *See Visciotti*,

537 U.S. at 26 (state court's conclusion that defendant was not prejudiced by counsel's inadequacy

was not unreasonable).

1

**CONCLUSION**

2          For the reasons stated above, respondent respectfully asks this Court to deny the petition

3    for writ of habeas corpus.

4

5          Dated:  March 17, 2008

6                              Respectfully submitted,

7                              EDMUND G. BROWN JR.
                               Attorney General of the State of California

8                              DANE R. GILLETTE
                               Chief Assistant Attorney General

9
                               GERALD A. ENGLER
10                             Senior Assistant Attorney General

                               PEGGY S. RUFFRA
11                             Supervising Deputy Attorney General

12
                               /s/ Jill M. Thayer
13                             JILL M. THAYER
                               Deputy Attorney General

14                             Attorneys for Respondent

15    40225229.wpd
      SF2008400274
16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

STATEMENT OF THE CASE                                                                 1

STATEMENT OF FACTS                                                                    2

ARGUMENT                                                                              4

    I.    **STANDARD OF REVIEW**                                          4

    II.    **THE INSTRUCTION REGARDING THE BASIC SPEED LAW, WHICH CREATED AN IMPERMISSIBLE MANDATORY PRESUMPTION, DID NOT HAVE A SUBSTANTIAL AND INJURIOUS EFFECT ON THE VERDICT**                                          5

    III.    **THE STATE COURT DETERMINATION THAT SUFFICIENT EVIDENCE SUPPORTS THE JURY'S FINDING OF IMPLIED MALICE WAS NOT AN UNREASONABLE APPLICATION OF SUPREME COURT AUTHORITY**                                          8

    IV.    **ADMISSION OF EVIDENCE OF PETITIONER'S EXPERIENCE WITH DEADLY TRAFFIC ACCIDENT AND UNSAFE DRIVING HISTORY DID NOT VIOLATE HIS RIGHT TO DUE PROCESS**                                          11

    V.    **THE STATE COURT'S DETERMINATION THAT PETITIONER WAS NOT PREJUDICED BY HIS ATTORNEY'S FAILURE TO REQUEST A LIMITING INSTRUCTION REGARDING THE BLANCO ROAD EVIDENCE WAS NOT AN UNREASONABLE APPLICATION OF SUPREME COURT AUTHORITY**                                          14

CONCLUSION                                                                           16

1

## TABLE OF AUTHORITIES

2

Page

3

**Cases**

4

*Boyde v. Brown*
404 F.3d 1159 (9th Cir. 2005)                                    11

5

*Brecht v. Abrahamson*
6   507 U.S. 619 (1993)                                          6, 7

7   *Calderon v. Coleman*
525 U.S. 141 (1998)                                              7

8
*California v. Roy*
9   519 U.S. 2 (1996)                                            7

10  *Carella v. California*
491 U.S. 263 (1989)                                              6

11
*Fry v. Pliler*
12  127 S.Ct. 2321 (2007)                                        7

13  *Gordon v. Duran*
895 F.2d 610 (9th Cir. 1985)                                    13

14
*Houston v. Roe*
15  177 F.3d 901, 910 n.6 (9th Cir. 1999)                        12

16  *Jackson v. Virginia*
443 U.S. 307 (1979)                                              8

17
*Jammal v. Van de Kamp*
18  926 F.2d 918 (9th Cir. 1991)                                 11

19  *Juan H. v. Allen*
408 F.3d 1262 (9th Cir. 2005)                                    8

20
*Kealohapauole v. Shimoda*
21  800 F.2d 1463 (9th Cir. 1986)                                11

22  *Morales v. Woodford*
388 F.3d 1159 (9th Cir. 2004)                                    7

23
*Neder v. United States*
24  527 U.S. 1 (1999)                                           6, 7

25  *People v. Autry*
37 Cal.App.4th 351 (1995)                                        9

26
*People v. Dellinger*
27  49 Cal.3d 1212 (1989)                                        9

28

## TABLE OF AUTHORITIES  (continued)

Page

*People v. Johnson*
26 Cal.3d 557 (1980)                                                  8

*People v. Talamantes*
11 Cal.App.4th 968 (1992)                                            9

*People v. Watson*
30 Cal.3d 290 (1981)                                                 9

*Shackleford v. Hubbard*
234 F.3d 1072 (9th Cir. 2000)                                        7

*Sims v.  Brown*
425 F.3d 560 (9th Cir.  2005)                                        7

*Stanton v. Benzler*
46 F.3d 726 (9th Cir. 1998)                                          7

*Strickland v. Washington*
466 U.S. 668 (1984)                                                 14

*Williams v. Stewart*
441 F.3d 1030 (9th Cir. 2006)                                       12

*Williams v. Taylor*
529 U.S. 362 (2000)                                                  5

*Windham v. Merkel*
163 F.3d 1092 (9th Cir. 1998)                                       11

*Woodford v. Visciotti*
537 U.S. 19 (2002)                                              5, 14, 15

*Yarborough v. Gentry*
540 U.S. 1 (2003)                                                  14

*Yates v. Evatt*
500 U.S. 391 (1991)                                                 6

**Constitutional Provisions**

United States Constitution
      Sixth Amendment                                               14

**Statutes**

California Penal Code
      § 187                                                          1
      § 191.5(a)                                                     1
      § 192(c)(1)                                                    1

**TABLE OF AUTHORITIES  (continued)**

**Page**

United States Code, Title 28
    § 2254(d)(1)      4

Vehicle Code
    § 12022.7(a)      2
    § 20001(c)      1
    § 23153(a)      1
    § 23153(b)      1

**Other Authorities**

Antiterrorism and Effective Death Penalty Act of 1996      4, 5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28