United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SHAVOUGUE ANTOINE MASON,

Petitioner,

v.

A. HEDGPETH, Warden,

Respondent.

No. C 07-4594 SBA (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

**INTRODUCTION**

This matter is now before the Court for consideration of Petitioner's pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his 2005 conviction in Monterey County Superior Court. Respondent A. Hedgpeth, Warden of the Kern Valley State Prison, opposes the petition. Petitioner has filed a traverse. For the reasons discussed below, the petition is DENIED as to all claims.

**BACKGROUND**

**I. Case History**

On February 7, 2005, a jury in Monterey County Superior Court convicted Petitioner of: three counts of murder (Cal. Pen.Code § 187 [counts 1-3]); two counts of gross vehicular manslaughter while intoxicated (Cal. Pen. Code § 191.5(a) [counts 4-5]); two counts of vehicular manslaughter with gross negligence (Cal. Pen. Code § 192(c)(1) [counts 6-7]); driving under the influence of alcohol causing injury (Cal. Veh. Code § 23153(a) [count 8]), and driving with a blood alcohol level of .08 or more (Cal. Veh. Code § 23153(b) [count 9]). On counts 4-7, the jury found true allegations that Petitioner fled the scene of a vehicular manslaughter (Cal. Veh. Code § 20001(c)), and on counts 8 and 9, the jury found true allegations that Petitioner inflicted great bodily injury (Cal. Pen. Code § 12022.7(a)). (Resp't. Ex. 1 at 218-19.) On March 29, 2005, the trial court

sentenced Petitioner to a total term of 45 years to life in state prison. (Id. at 263-64.)

On September 7, 2006, the California Court of Appeal affirmed the judgment on all counts in an unpublished opinion. The Court of Appeal vacated that opinion and granted a rehearing, after which it affirmed the judgment on all counts again in an unpublished opinion dated February 8, 2007. The California Supreme Court denied a petition for review on May 9, 2007.

The instant petition was filed on September 5, 2007. On January 15, 2008, Respondent was ordered to show cause. Respondent filed an answer and memorandum of points and authorities on March 17, 2008, and lodged a number of exhibits. Petitioner filed a traverse on May 21, 2008.

## II. Statement of Facts

The following facts are taken from the opinion of the California Court of Appeal:

> Around noon on December 4, 2003, City of Salinas employees Jose Zepeda and Raul Zagal were parked at the curb of Park Street between Villa and Homestead Streets, when they heard a vehicle approaching them eastbound on Park Street. A green car passed them at a speed both estimated to be over 60 miles per hour. Zepeda got a good look at the driver and later identified him as defendant.
>
> Park Street runs east-west and has stop signs at each intersection which permit north-south traffic to flow unimpeded. The neighborhood is a high-density residential area with a 25 mile per hour speed limit. Zepeda watched the green car accelerate to about 75 miles per hour though the intersection of Park and Homestead Streets without attempting to stop at the stop sign. The vehicle had reached about 80 miles per hour when it entered the next intersection at West Street, again making no attempt to stop at the stop sign. Zepeda lost sight of the green car between West Street and the third intersection at Riker Street.
>
> Bruce Laine was driving on West Street approaching the Park Street intersection when he saw a vehicle traveling more than 60 miles per hour "fl[y] through the stop signs at Park and West Street" and collide with a BMW traveling about 20 miles per hour southbound on Riker Street. Rene Porras was the driver of the BMW; eight-months pregnant Rosalinda Gonzales was the front seat passenger, and three-year-old Rene Porras, Jr., and five-year-old Joshua Perez were in the backseat.
>
> Defendant's car, a Volkswagen Passat, which had been traveling eastbound on Park Street, came to rest in the middle of the intersection with Riker Street facing westbound. The BMW came to rest against a residence. A third vehicle was struck by the BMW as it careened toward the residence; it sustained only minor damage.
>
> Defendant's airbag deployed. He stayed inside his car for 10 to 20 seconds, then slowly emerged looking both "very weary" and "very stunned." He walked to the BMW, leaned over and looked briefly into the car through the passenger side window, and then either walked rapidly or ran away from the

scene. He went to the apartment he shared with his girlfriend, Misty Flores, about 1/10th of a mile from the scene, and had her call 911. Police took him into custody shortly thereafter. Police found a three-quarter full bottle of Bacardi Silver Raz, a raspberry-flavored rum drink with the alcohol content of beer, on the kitchen counter. An empty 750 mm bottle of Hennessey cognac was found in the VW's trunk compartment.

When police officers took defendant into custody, he smelled moderately of alcohol and had “somewhat glassy and red” eyes. He was given field sobriety tests at the police department at 1:15 p.m., causing an officer to conclude he was under the influence of alcohol. Defendant's blood alcohol level at that time, measured with a hand-held breath screening device, was 0.13. A blood sample drawn at 1:50 p.m. yielded a blood alcohol level of 0.19 percent. At trial, a criminalist testified that the hand-held screening device does not necessarily accurately measure alcohol that might be in a person's system, depending on whether the subject has blown long enough or hard enough to get to the deepest air in the lungs. The criminalist testified that based on the two test results, defendant's blood alcohol level at noon, just before the accident, was 0.23.

Porras died as a result of major head injuries. Gonzales, who could not be taken from the car until part of it had been cut away, died from a broken neck exacerbated by significant blood loss from a ruptured uterus. The fully-developed female fetus being carried by Gonzales died from asphyxiation brought on by the terminal injuries to Gonzales. Rene Porras, Jr., suffered a fractured tibia and Joshua Perez escaped with bruises and scrapes.

Conclusions based on a reconstruction of the accident were: (1) defendant's vehicle had no mechanical problems that would have contributed to the accident; (2) defendant's speed at impact was 46.28 miles per hour and the speed of the BMW was 20.16; and (3) defendant's car had not stopped at the stop sign at the site of the collision, Riker and Park Streets. An expert testified that “impact speed” is not the speed at impact; it is the speed “where the crushing stops.” Defendant's speed prior to impact would have been greater than 46.28 miles per hour.

Defendant stood trial on a nine-count information alleging three counts of murder (Pen.Code, § 187, counts 1-3);[1] two counts of gross vehicular manslaughter while intoxicated (§ 191.5, subd. (a), counts 4-5) and two counts of vehicular manslaughter with gross negligence (§ 192, subd. (c)(1), counts 6-7) with the allegations that defendant fled the scene after committing the offenses alleged in counts 4, 5, 6, and 7 (Veh.Code, § 20001, subd. (c)); driving under the influence of alcohol causing injury (id., § 23153, subd. (a), count 8); and driving with a blood alcohol level of 0.08 and above (id., at subd. (b), count 9). Counts 8 and 9 also carried the allegations that defendant personally inflicted great bodily injury on Rene Porras and Rosalinda Gonzales in their commission (§ 12022.7, subd. (a)), and that he personally inflicted great bodily injury upon Rene Porras, Jr., a child under the age of five years (id., at subd. (d)).

At the jury trial, defendant testified that he was working as a night auditor/manager at the Monterey Beach Resort in December 2003, and that he

[1]Further statutory references are to the Penal Code unless otherwise stated.

had been working overtime eight-hour night and day shifts that month. On December 4, he woke up early after a few hours sleep and took the child of a family friend to school. He then went to a friend's house, stayed there for a while, and then gave his friend a ride somewhere, after which he decided to go home and lie down because he was tired. It was about 11:45 a.m. Driving at about 25 miles per hour, he turned onto Park Street from Villa Street, did a “bump stop” at Homestead and Park Streets, dozed off as he passed Homestead, and awoke just before the collision. He slammed on his brakes, but crashed into the BMW's passenger door.

Defendant's air bag deployed. He did not become unconscious, but sat in his car stunned, and then climbed out and went to the other car. Everybody was unconscious except the two children who were crying. He had to “actually ask the kids to calm down because I couldn't get them out of the car.... I told them to wait until the police came.” Defendant explained he did not try to get the children out of the car before the police or an ambulance came “[b]ecause I have medical training and you're not supposed to touch people until medical people get there.” There was a lady standing in the yard and defendant asked her to call 911. She was speaking Spanish. Defendant stated he was hysterical. He did not see anyone else around although Zepeda and others who observed him driving were coming to the scene. When the lady “didn't respond, I just basically panicked and I said I was going to my house to call the police.” He ran home and told his girlfriend, “I need to call 911. Call 911.”

Defendant denied having anything to drink before the collision but drank only after it. After he told Flores to call the police, he got a half-full pint bottle of Hennessey cognac out of a cabinet and “just turned it up and drunk [ sic ] it” all. He also took some sips from a Bacardi Silver as well, but that was while he was on the phone with the dispatcher. While he was still on the phone with the dispatcher, there was a knock on the door. Police were waiting for him downstairs. He left the apartment to meet them and was immediately handcuffed. After he had been outside for a while, he began to feel the effects of the alcohol he had drunk at home.

Defendant admitted going “a few” miles per hour over the speed limit, but he did not believe he was going between 60 and 80 miles per hour. He acknowledged that going at a high speed through an intersection was “possibly” dangerous to others, that unsafe speed could kill, and that driving under the influence was dangerous. He described himself as hysterical and panicked after the collision and said he drank the brandy to calm his nerves.

Flores corroborated she called 911 for defendant and provided him with alcohol. She said defendant told her he did not know if anyone had been hurt in the accident. Flores's son testified about putting a liquor container in a dumpster. Officer John Lynn testified Flores told him defendant drank a 12-ounce bottle of Bacardi Silver plus a few sips from a second bottle. The first went into the dumpster and the second was taken by police. Flores stated there had been no bottles of Hennessey in the apartment.

On February 7, 2005, the jury found defendant guilty of all counts and found true all allegations except great bodily injury on Rene Porras, Jr.

(People v. Mason, 2007 WL 417379 at *2-4 (Cal. Ct. App. 2007) (footnotes in original).)

**DISCUSSION**

## I. Legal Standard

### A. Standard of Review for State Court Decisions

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a district court may grant a petition challenging a state conviction or sentence on the basis of a claim that was "adjudicated on the merits" in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court has "adjudicated" a petitioner's constitutional claim "on the merits" for purposes of § 2254(d) when it has decided the petitioner's right to post-conviction relief on the basis of the substance of the constitutional claim advanced, rather than denying the claim on the basis of a procedural or other rule precluding state court review on the merits. Lambert v. Blodgett, 393 F.3d 943, 969 (9th Cir. 2004). It is error for a federal court to review de novo a claim that was adjudicated on the merits in state court. See Price v. Vincent, 538 U.S. 634, 638-43 (2003).

#### 1. Section 2254(d)(1)

Challenges to purely legal questions resolved by a state court are reviewed under § 2254(d)(1), under which a state prisoner may obtain habeas relief with respect to a claim adjudicated on the merits in state court only if the state court adjudication resulted in a decision that was "contrary to" or "involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." Williams (Terry) v. Taylor, 529 U.S. 362, 402-04, 409 (2000). While the "contrary to" and "unreasonable application" clauses have independent meaning, see id. at 404-05, they often overlap, which may necessitate examining a petitioner's allegations against both standards, see Van Tran v. Lindsey, 212 F.3d 1143, 1149-50 (9th Cir. 2000), overruled on other grounds, Lockyer v. Andrade, 538 U.S. 63, 70-73 (2003).

##### a. Clearly Established Federal Law

"Clearly established federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of

the relevant state-court decision." Williams, 529 U.S. at 412. "Section 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." Id. "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous." Mitchell v. Esparza, 540 U.S. 12, 17 (2003). If there is no Supreme Court precedent that controls on the legal issue raised by a petitioner in state court, the state court's decision cannot be contrary to, or an unreasonable application of, clearly-established federal law. See, e.g., Stevenson v. Lewis, 384 F.3d 1069, 1071 (9th Cir. 2004).

The fact that Supreme Court law sets forth a fact-intensive inquiry to determine whether constitutional rights were violated "obviates neither the clarity of the rule nor the extent to which the rule must be seen as 'established'" by the Supreme Court. Williams, 529 U.S. at 391. There are, however, areas in which the Supreme Court has not established a clear or consistent path for courts to follow in determining whether a particular event violates a constitutional right; in such an area, it may be that only the general principle can be regarded as "clearly established." Andrade, 538 U.S. at 64-65. When only the general principle is clearly established, it is the only law amenable to the "contrary to" or "unreasonable application of" framework. See id. at 73.

Circuit decisions may still be relevant as persuasive authority to determine whether a particular state court holding is an "unreasonable application" of Supreme Court precedent or to assess what law is "clearly established." Clark v. Murphy, 331 F.3d 1062, 1070-71 (9th Cir.), cert. denied, 540 U.S. 968 (2003); Duhaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 1999).

**b. "Contrary to"**

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A "run-of-the-mill state-court decision" that correctly identifies the controlling Supreme Court framework and applies it to the facts of a prisoner's case "would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." Williams, 529 U.S. at 406. Such a case should be analyzed under the "unreasonable application" prong of § 2254(d). See Weighall v. Middle, 215 F.3d 1058, 1062 (9th Cir. 2000).

c. **"Unreasonable Application"**

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 412-13. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411; accord Middleton v. McNeil, 541 U.S. 433, 436 (2004) (per curiam) (challenge to state court's application of governing federal law must be not only erroneous, but objectively unreasonable); Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam) ("unreasonable" application of law is not equivalent to "incorrect" application of law).

Evaluating whether a rule application was unreasonable requires considering the relevant rule's specificity; if a legal rule is specific, the range of reasonable judgment may be narrow; if it is more general, the state courts have more leeway. Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). Whether the state court's decision was unreasonable must be assessed in light of the record that court had before it. Holland v. Jackson, 542 U.S. 649, 651 (2004) (per curiam).

The objectively unreasonable standard is not a clear error standard. Andrade, 538 U.S. at 75-76 (rejecting Van Tran's use of "clear error" standard); Clark, 331 F.3d at 1067-69 (acknowledging the overruling of Van Tran on this point). After Andrade,

> [t]he writ may not issue simply because, in our determination, a state court's application of federal law was erroneous, clearly or otherwise. While the "objectively unreasonable" standard is not self-explanatory, at a minimum it denotes a greater degree of deference to the state courts than [the Ninth Circuit] ha[s] previously afforded them.

Id. In examining whether the state court decision was unreasonable, the inquiry may require analysis of the state court's method as well as its result. Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003).

2. **Sections 2254(d)(2), 2254(e)(1)**

A federal habeas court may grant a writ if it concludes a state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). An unreasonable determination of the facts occurs where a state court fails to consider and weigh highly probative, relevant evidence, central to a petitioner's claim, that was properly presented and made part of the state court record. Taylor v. Maddox, 366 F.3d 992, 1005 (9th Cir. 2004). A district court must presume correct any determination of a factual issue made by a state court unless a petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Section 2254(d)(2) applies to an intrinsic review of a state court's fact-finding process, or situations in which the petitioner challenges a state court's fact-findings based entirely on the state court record, whereas § 2254(e)(1) applies to challenges based on extrinsic evidence, or evidence presented for the first time in federal court. See Taylor v. Maddox, 366 F.3d 992, 999-1000 (9th Cir. 2004). In Taylor, the Ninth Circuit established a two-part analysis under §§ 2254(d)(2) and 2254(e)(1). Id. First, federal courts must undertake an "intrinsic review" of a state court's fact-finding process under the "unreasonable determination" clause of § 2254(d)(2). Id. at 1000. The intrinsic review requires federal courts to examine the state court's fact-finding process, not its findings. Id. Once a state court's fact-finding process survives this intrinsic review, the second part of the analysis begins by dressing the state court finding in a presumption of correctness under § 2254(e)(1). Id. According to the AEDPA, this presumption means that the state court's fact-finding may be overturned based on new evidence presented by a petitioner for the first time in federal court only if such new evidence amounts to clear and convincing proof a state court finding is in error. See 28 U.S.C. § 2254(e)(1). "Significantly, the presumption of correctness and the clear-and-convincing standard of proof only come into play once the state court's fact-findings survive any intrinsic challenge; they do not apply to a challenge that is governed by the deference implicit in the 'unreasonable determination' standard of section 2254(d)(2)." Taylor, 366 F.2d at 1000.

When there is no reasoned opinion from the highest state court to consider the Petitioner's claims, the Court looks to the last reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991). Here, the California Court of Appeal was the highest state court to issue an explained opinion on Petitioner's claims.

## II. Exhaustion

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through state collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. See 28 U.S.C. § 2254(b), (c); Granberry v. Greer, 481 U.S. 129, 133-34 (1987). It is undisputed that Petitioner exhausted his state court remedies as to the claims raised in his petition. Specifically, Petitioner exhausted all four of his claims on direct and collateral appeal in the state courts.

## III. Legal Claims

Petitioner raises four claims in his petition: (1) that the jury instruction on the basic speed law created a mandatory presumption, in violation of due process; (2) that there was insufficient evidence of murder, in violation of due process; (3) that the trial court violated his right to due process by admitting evidence of Petitioner's prior bad acts; and (4) that he received ineffective assistance of counsel.

### 1. Jury Instruction

Petitioner claims that the jury instruction on the basic speed law, in conjunction with the instruction on implied malice, violated his right to due process by setting forth a mandatory presumption that the violation of the basic speed law is the commission of an act inherently dangerous to human life.

The Due Process Clause of the Fourteenth Amendment protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he or she is charged. In re Winship, 397 U.S. 358, 364 (1970). This constitutional principle prohibits the State from using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime. See Yates v. Evatt, 500 U.S. 391, 400-03 (1991). An instruction that creates a mandatory presumption violates due process because it "directly foreclose[s] independent jury consideration of whether the facts proved establish[] certain elements of [the charged offense] . . .

and relieve[s] the State of its burden of . . . proving by evidence every essential element of [the] crime beyond a reasonable doubt." Carella v. California, 491 U.S. 263, 265-66 (1989) (citations omitted).

The implied malice instruction, pursuant to CALJIC No. 8.11, read as follows:

> Malice is implied when (1) the killing resulted from an intentional act, (2) the natural consequences of the act are dangerous to human life, and (3) the act was deliberately performed with knowledge of the danger to and with conscious disregard for human life.

(Resp't. Ex. 2 at 1657.) The instruction regarding the basic speed law, pursuant to CALJIC No. 8.95, read as follows:

> The basic speed law of the state is as follows: No person shall drive a vehicle at a speed greater than is reasonable or prudent, having due regard for the weather, visibility, the traffic on and the surface and width of the highway and in no event at a speed which endangers the safety of persons or property. A violation of the basic speed law is the commission of an act inherently dangerous to human life and safety is [sic] a misdemeanor or an infraction.
>
> The rate of speed at which a person travels is considered as an isolated fact in terms of seventy [sic] miles per hour is not alone proof of a violation.

(Id. at 1660-61.)

Petitioner argues that these instructions created a mandatory presumption by instructing the jury that it could find second degree murder based on implied malice if it found "the killing resulted from an intentional act [and] the natural consequences of the act are dangerous to human life," followed by the instruction that "a violation of the basic speed law is the commission of an act inherently dangerous to human life." (Id. at 1657, 1660-61.) The California Court of Appeal agreed, finding that the instruction created an impermissible mandatory presumption by stating that a violation of the basic speed law is the commission of an act inherently dangerous to human life. Mason, 2007 WL 417379 at *13. Respondent does not dispute that the instruction erred in this fashion.

The Court of Appeal went on to find the error harmless, however, based on the following reasoning:

> Bringing this analysis to our case, the parties recognized that intent to kill was an issue. Both parties fully and fairly presented the evidence at their command on the issue. In his testimony, defendant acknowledged speeding (but disputed the prosecution's expert's 60 mile-per-hour estimate), and conceded that driving under the influence was dangerous, that unsafe speed could kill, that traveling at high speed

> through intersections was dangerous, and that running a stop sign could kill. He implicitly admitted running the stop sign just before broadsiding the victims' vehicle by testifying that (contrary to the physical evidence which showed no sign of braking) he slammed on the brakes before the collision.
>
> Defense counsel conceded in closing argument that defendant was speeding and acknowledged the 46 mile-per-hour impact speed (identified by the expert as the speed “when the crushing stops,” in this case estimated at 21 miles-per-hour above the 25-mile-per-hour speed limit, but less than the speed prior to impact which could have been greater than 46 miles per hour).
>
> The prosecution presented further facts of defendant's impairment with evidence of a .23 blood alcohol level before the accident at noon, and the physical symptoms of moderately bloodshot and watery eyes and an odor of alcohol.
>
> We conclude the record not only established malice, that is, conduct characterized as a wanton disregard for life and a subjective awareness of the risk created ( Watson, supra, 30 Cal.3d at p. 298) as a matter of law, but showed that the contrary evidence (defendant's dispute over his rate of speed, and whether he had drunk alcohol before the accident, that defendant braked before the impact) was not worthy of consideration. There is no realistic chance the defendant was actually harmed by the error. To reverse a judgment under such circumstances encourages litigants to abuse the judicial process and bestirs the public to ridicule it. (Flood, supra, 18 Cal.4th at p. 507.) Under both People v. Watson, supra, 46 Cal.2d at pages 836 through 837, and Chapman, supra, 386 U.S. at page 24, the error was harmless.

Id. at *14.

Petitioner argues that the error in the instructions is not subject to a harmless error analysis. Petitioner is incorrect. An instruction that erroneously creates a mandatory presumption is reviewed for harmless error because it is not equivalent to a directed verdict for the state--the jury is still required to find the predicate facts underlying each element beyond a reasonable doubt. Carella, 491 U.S. at 266; see also Neder v. United States, 527 U.S. 1, 9 (1999) (same).

Where the state court disposed of a constitutional error as harmless under an appropriate standard of review, federal courts must, for purposes of application of the “unreasonable application” clause of § 2254(d)(1), first determine whether the state court’s harmless error analysis was objectively unreasonable. Medina v. Hornung, 386 F.3d 872, 878 (9th Cir. 2004). If the federal court determines that the state court’s harmless error analysis was objectively reasonable, then habeas relief is not available under § 2254(d)(1). Id. The California Court of Appeal applied the harmless error standard from Chapman v. California, 386 U.S. 18 (1967), under which a federal court must find the constitutional error “harmless beyond a reasonable doubt." Id. at 24. This is the correct harmless error standard to apply to trial errors, such as the instructional error in this case.

See Brecht v. Abrahamson, 507 U.S. 619, 629 (1993). As the California Court of Appeal applied the correct harmless error standard, this Court must determine whether its harmless error analysis was objectively unreasonable.

There was strong evidence in this case that Petitioner intentionally committed a number of acts whose natural and probable consequences were dangerous to human life, to wit: he drove over 20 miles over the speed limit, he drank enough alcohol to be driving under its influence, he impliedly admitted to running through a number of stop signs, and the physical evidence showed that he did not apply his brakes before the crash. In addition, Petitioner conceded that speeding, going through stop signs, and driving under the influence are dangerous activities that could kill people. Based on this record, the jury would have very likely found that Petitioner drove in a manner that was inherently dangerous to human life and disregarded that risk, in other words that he had implied malice, even if the jury had not been instructed to presume that violating the speed law is dangerous to human life. Consequently, the California Court of Appeal's finding the instructional error to be harmless was objectively reasonable within the meaning of § 2254(d)(1). Accordingly, Petitioner is not entitled to habeas relief on this claim.

**2. Sufficiency of the Evidence of Implied Malice**

Petitioner claims that his right to due process was violated because there was insufficient evidence to prove implied malice, an element of his convictions for second-degree murder. If the evidence in support of a state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt, the conviction violates due process and the state petitioner is entitled him to federal habeas relief from that conviction. Jackson v. Virginia, 443 U.S. 307, 321, 324 (1979). A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. Payne v. Borg, 982 F.2d 335, 338 (9th Cir. 1992). The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting Jackson, 443 U.S. at 319). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, may the writ be granted. Jackson, 443 U.S. at 324.

As described above, under California law, implied malice is defined as follows:

> Malice is implied when (1) the killing resulted from an intentional act, (2) the natural consequences of the act are dangerous to human life, and (3) the act was deliberately performed with knowledge of the danger to and with conscious disregard for human life.

CALJIC No. 8.11; see People v. Dellinger, 49 Cal.3d 1212, 1222 (1989).

In addition to the evidence of Petitioner's driving and his conduct after the accident, the trial court admitted evidence of Petitioner's driving history as relevant to the issue of implied malice. In particular, there was evidence that Petitioner had been responsible for a non-injury car accident in 1999 in which Petitioner struck the rear of another car, that Petitioner had been convicted of alcohol-related reckless driving in 1993, that he had been cited for speeding six times between 1995 and 2001, that he had been cited for disobeying a traffic signal in 1996, and that he had been cited for failing to yield to a pedestrian in an intersection in 2001. Mason, 2007 WL 4173379 at *4-*5. In addition, the trial court admitted evidence that Petitioner had recently seen his friend killed in a car accident on Blanco Road in Salinas. Id. at *4. The California Court of Appeal described the evidence of that accident as follows:

> The Blanco Road evidence came from the California Highway Patrol officer who investigated it and defendant's testimony. The officer arrived on the scene in the early morning hours of March 18, 2001, and saw a heavily damaged blue Jeep with an unconscious driver blocking Blanco Road. A heavily damaged red car contained the remains of its driver, defendant's friend Abad Hughes, who was killed in the accident. Hughes's body was "hanging out of the driver's side from his waist where the window starts and then his head was smashed into the ground" with "brain matter [splattered] across the road." Defendant's car, a gray Dodge Stratus, was in a ditch off the shoulder further along Blanco Road, and had also been involved in the accident. Defendant stated he had been driving ahead of Hughes when he saw the Jeep approaching him on the wrong side of the road, and he swerved to the right to avoid it, but could not. The Jeep hit defendant's car and knocked it off the road. The Jeep continued in the wrong lane of traffic and crashed into Hughes's car.

Id.

The California Court of Appeal found the foregoing evidence to be sufficient to prove implied malice based on the following reasoning:

> Expert testimony placed defendant's blood alcohol level at 0.23 at noon, just before the collision. Defendant admitted under cross-examination that he was driving "a few miles" over the speed limit; he did not come to a complete stop at the Homestead intersection; and he dozed off just before the collision. He also stated he knew it was dangerous to the lives of others to drive while under the influence, that he knew there was possible danger to others when one drives at a high speed through an intersection, and that he knew driving at an unsafe speed could kill. Defendant's

> conduct immediately after the accident (looking into the BMW and seeing unconscious adults and crying children, doing nothing to help them, running home, and drinking a substantial amount of alcohol before and while talking to the dispatcher) supported the inference of a consciousness of guilt that his dangerous driving while intoxicated resulted in harm to the victims. Furthermore, defendant's consuming alcohol immediately after the accident and telling the 911 operator that he had just started drinking reasonably supports the inference he consciously attempted to mislead the investigators and make irrelevant the results of the blood alcohol test. Finally, in light of the true finding of the allegation that he fled from the scene, evidence of flight supports an inference of consciousness of guilt. (§ 1127c.)
>
> Defendant's driving history entitled the jury to infer that regardless of the circumstances surrounding a prior instance of reckless driving, "the driver's subsequent apprehension and prosecution for that conduct must impart a knowledge and understanding of the personal and social consequences of such behavior." ( People v. Ortiz (2003) 109 Cal.App.4th 104, 115 (Ortiz ).) In this case, defendant's driving history and his subsequent failure to conform his conduct to statutory norms is evidence supporting an inference of malice because it reflects actions done with a subjective awareness of danger greater than that of other drivers, and a willingness to commit the acts anyway. (Id. at ¶. 115-116.) Even the Blanco Road accident for which defendant was not charged and in which his friend was killed supports an inference by a rational jury that the totality of defendant's past experiences gave him the knowledge to appreciate the risk to human life of a driver's failure to conform his conduct to the rules governing the operation of a vehicle, despite which defendant acted deliberately with conscious disregard for life. (Watson, supra, 30 Cal.3d at p. 296.)

Mason, 2007 WL 417379 at *6-*7.

For the reasons explained by the California Court of Appeal, there was sufficient evidence for a rational jury to find beyond a reasonable doubt that Petitioner acted with implied malice, i.e. that he knew that his conduct was dangerous to human life and he consciously disregarded that danger. The evidence showed that Petitioner was driving at least 46 miles per hour and possibly up to 80 miles per hour in a residential area, well in excess of the speed limit of 25 miles per hour; that he was driving under the influence of alcohol, with up to a 0.23 blood alcohol level; and that he drove through at least three stop signs when he crashed into the victims' car. Further, he admitted at trial to knowing that driving while intoxicated, speeding, and driving through stop signs were dangerous activities and could kill. In addition, there was strong evidence that he knew from the recent car accident on Blanco Road in which he had witnessed his friend killed by another driver that dangerous and unlawful driving, such as what he had done, could kill. Petitioner had also caused a different accident, been convicted for alcohol-related reckless driving, and received at least six speeding tickets in the prior six years, all of which would have alerted him to the dangers and unlawfulness of driving under the influence and speeding. In sum, there was sufficient evidence

introduced at trial for a rational juror to find beyond a reasonable doubt that Petitioner knew of the lethal danger of his conduct and disregarded that danger in this case. Consequently, the California Court of Appeal reasonably found that Petitioner's murder convictions were supported by sufficient evidence of implied malice.

Accordingly, the state court's denial of Petitioner's claim of insufficiency of evidence was neither contrary to nor an unreasonable application of federal law, and Petitioner is not entitled to habeas relief on this claim.

**3. Admission of Evidence**

Petitioner claims that the trial court violated his right to due process by admitting the evidence of his driving history and the accident on Blanco Road. The trial court found such evidence relevant to show that Petitioner knew that his driving unlawfully endangered the lives of others and acted with implied malice, an essential element of the second-degree murder charges. Horne, 2007 WL 4173379 at *7. The trial court also admitted evidence that immediately of the Blanco Road accident Petitioner drank alcohol, finding that such evidence was relevant to the credibility of Petitioner's testimony he had also drunken alcohol right after the accident in this case. Id. In addition, the trial court also issued the following limiting instruction, pursuant to CALJIC No. 2.50, regarding the evidence of Petitioner's traffic violations:

> [E]vidence is going to be introduced for the purpose of showing that the Defendant committed infractions. It is not used for any purpose other than that, for which he is on trial, this evidence, if believed, may not be considered by you to prove that the Defendant is a person of bad character or that he has a disposition to commit crimes. [¶] It may be considered by you only for the limited purpose as determining if it tends to show the existence or the intent or mental state which is a necessary element of the crime of murder as charged in counts one, two and three. [¶] For the limited purpose for which you may consider this evidence, you must weigh it in the same manner as all the other evidence in the case. You are not permitted to consider this evidence for any other purpose.

Id. at *10. Petitioner argues that the evidence of his driving history and of the Blanco Road accident was irrelevant and prejudicial. The California Court of Appeal found the evidence relevant for the reasons explained by the trial court and not unduly prejudicial. Id. at *9 -*11.

The United States Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009). Absent such a

ruling from the United States Supreme Court, a federal habeas court cannot find the state court's ruling was an "unreasonable application" of "clearly established federal law" under 28 U.S.C. § 2254(d)(1). Id. (citing Carey v. Musladin, 549 U.S. 70, 77 (2006)). Under Holley, therefore, this Court cannot grant habeas relief under § 2254(d)(1) on Petitioner's claim that the admission of evidence, even if it were irrelevant and overly prejudicial evidence, violated his right to due process. See id. at 1101 n.2 (finding that although trial court's admission of irrelevant and prejudicial evidence violated due process under Ninth Circuit precedent, such admission was not contrary to, or an unreasonable application of, "clearly established Federal law" under § 2254(d)(1) and therefore not grounds for granting federal habeas relief).

Moreover, even if federal habeas relief were available under § 2254(d)(1) pursuant to Ninth Circuit precedent, the admission of the evidence in this case did not violate due process. The due process inquiry is whether the admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair. See Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir. 1995). Only if there are no permissible inferences that the jury may draw from the evidence can its admission violate due process. Jammal v. Van de Kamp, 926 F.2d 918, 919-20 (9th Cir. 1991).

The California Court of Appeal correctly identified the permissible inferences that could be drawn from the evidence. In the Blanco Road accident, Petitioner saw that unlawful and dangerous driving can kill, which was relevant to show that when Petitioner drove unlawfully by speeding, driving through stop signs and drinking, he knew that this conduct endangered the lives of others and consciously disregarded that danger.[2] The evidence of Petitioner's traffic violations was also relevant to the issue of implied malice. Petitioner's ten prior traffic violations showed that "past experience had warned him that speeding, failing to yield to a pedestrian, failing to stop at a stop sign, and driving under the influence of alcohol" were unlawful and endangered the lives of others, and that "on this occasion as defendant sped through several stop signs after having been drinking, he was aware of the risk to safety of which he had been warned on more than 10 occasions and

---

[2]Petitioner argues that he could not have learned of the danger of unlawful driving from the Blanco Road accident because he did not cause that accident. This argument does not stand to reason. Witnessing a friend getting killed by the dangerous and unlawful driving of another could reasonably be viewed as teaching Petitioner that the lives of others are endangered by dangerous and unlawful driving, even though Petitioner was not the driver who killed his friend.

which he was then consciously disregarding." Mason, 2007 WL 417379 at *9. Finally, the evidence that Petitioner stated he drank alcohol directly after the Blanco Road accident, as he testified to doing in this case, was relevant because the jury could find his credibility diminished by the fact that he had offered the same explanation for the alcohol on his breath after both in the Blanco Road accident and the accident in this case.

As the jury could draw permissible inferences from the evidence of Petitioner's driving history and the Blanco Road accident, the state court's denial of his due process claim based on the admission of such evidence was neither contrary to nor an unreasonable application of federal law. Consequently, Petitioner is not entitled to habeas relief on this claim.

**4. Ineffective Assistance of Counsel**

Petitioner claims that he received ineffective assistance of counsel because counsel failed to request a standard limiting instruction regarding the evidence of the Blanco Road accident and Petitioner's conduct directly afterwards. Specifically, he argues that counsel should have requested that the jury be instructed that the evidence could be used for the limited purpose of showing Petitioner's mental state, and that it could not use the evidence for to prove Petitioner's bad character or propensity to commit crimes.[3]

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. Id. In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under professional norms. Id. at 687-88. Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

[3] As indicated above, such an instruction was given concerning the evidence of Petitioner's past traffic violations, but not concerning the Blanco Road accident. (Resp't. Ex. 1 at 1061.)

been different. Id. at 694. Where the defendant is challenging his conviction, the appropriate question in determining prejudice is "'whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" Luna v. Cambra, 306 F.3d 954, 961 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 695).

The California Court of Appeal found that counsel erred in failing to request an instruction limiting the jury's use of the evidence of the Blanco Road accident. Mason, 2007 WL 417379 at *11. The Court of Appeal rejected the claim of ineffective assistance, however, because it found that the failure to request the instruction was not prejudicial under Strickland. (Id. at *11-12.) The Court of Appeal's conclusion that there was no reasonable likelihood that the limiting instruction would have changed the outcome of the case was reasonable in light of the very strong evidence of Petitioner's guilt.[4] Several eyewitnesses saw Petitioner speeding and running through the stop signs prior to the collision, and leave the scene after the collision. Breath and blood tests taken after the accident, as well empty alcohol bottles in the car, showed that Petitioner had been driving under the influence of alcohol, and expert testimony indicated that his blood alcohol level was 0.23, nearly three times the legal limit of 0.08. Petitioner's driving record and the Blanco Road accident strongly demonstrated, as described above, that he knew that his conduct was dangerous and that he disregarded that danger, i.e. that he acted with implied malice. Given the strength of this evidence of Petitioner's guilt, the California Court of Appeal reasonably concluded that it is not reasonably likely that the outcome of the case would have been different if counsel had requested a limiting instruction about the Blanco Road evidence.

Under these circumstances, the state court's denial of Petitioner's claim of ineffective assistance of counsel was neither contrary to nor an unreasonable application of federal law. Petitioner is not entitled to habeas relief on this claim.

**CONCLUSION**

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED. The Clerk of

---

[4]In light of this conclusion, this Court need not address the California Court of Appeal's finding that counsel's failure to request the limiting instruction amounted to deficient performance. See Strickland, 466 U.S. at 697; Williams v. Calderon, 52 F.3d 1465, 1470, n.3 (9th Cir. 1995) (applauding district court's refusal to consider whether counsel's conduct was deficient after determining that petitioner could not establish prejudice).

the Court shall enter judgment and close the file.

IT IS SO ORDERED.

DATED: 2/8/10

SAUNDRA BROWN ARMSTRONG
United States District Judge